WAGNER EXCELLO FOODS, INC., Plaintiff-Appellant, v. FEARN INTERNATIONAL, INC., Defendant-Appellee.

First District (6th Division)   No. 1—91—1566

Opinion filed September 4, 1992.

Norman P. Jeddeloh and Michael A. Kraft, both of Siegan, Barbakoff & Gomberg, of Chicago, for appellant.

Barry T. McNamara and David P. von Ebers, both of D'Ancona & Pflaum, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Wagner Excello Foods, Inc., appeals from orders dismissing its complaints against the defendant, Fearn International, Inc. The first complaint alleged breach of contract and promissory estoppel. After that complaint was dismissed, the plaintiff filed an amended complaint alleging only breach of contract. That amended complaint was also dismissed.

Because the complaints were dismissed pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), the factual allegations of the complaints are taken as true. Our recitation of the facts is based on the complaints.

The plaintiff and the defendant entered into a five-year agreement on February 1, 1985. Under the terms of the agreement, the plaintiff agreed to manufacture for the defendant various pasteurized fruit drink concentrates with a juice content of less than 35%. The plaintiff was to manufacture the concentrates from formulas supplied by the defendant and was to package the concentrate according to the defendant's specifications.

The agreement contained minimum quantity purchase requirements: the defendant was to purchase 150,000 cases of concentrate of assorted varieties the first year, 300,000 cases the second year, and at least 450,000 cases in each of the final three years.

The agreement did not establish the price at which the concentrate would be sold. Instead, it provided that the plaintiff and the defendant would review the price per case of each product every four months. Thirty days before the end of each four-month period, the plaintiff was required to notify the defendant of, and substantiate, any proposed price changes for the upcoming period. If the defendant failed to object to the proposed price change, the new price would go into effect. If the defendant objected, however, the plaintiff and the

defendant would seek to "mutually agree" on the price change. If the plaintiff and defendant were unable to agree on a price, the agreement terminated 30 days after the end of the four-month period. At the end of five years, the agreement would automatically extend on a year-to-year basis until one party terminated through written notice between 120 and 90 days before the expiration of the agreement or its extension.

After the agreement was signed, the plaintiff hired additional employees and bought equipment, including machinery, necessary to package the concentrate as the defendant instructed. The purchase of the equipment and additional employees cost the plaintiff $900,286. The plaintiff purchased the equipment and hired the additional employees "solely in contemplation of a continuing business relationship" with the defendant.

During the first year of the agreement, the defendant purchased only 28,823 cases of concentrate from the plaintiff, far short of the agreed 150,000 cases (19.2% of the required amount); in the second year, the defendant purchased only 35,927 cases (12% of the required amount); in the third year, the defendant purchased 40,196 cases (8.9% of the required amount).

Near the end of the third year of the agreement, the plaintiff and defendant executed a revised agreement on January 20, 1988. The revised agreement stated that it did not alter or modify the previous agreement except as provided in the revised agreement. The revised agreement stated that it evolved from several meetings between the parties and reflected "understandings between the parties as to pricing and other conditions" which were noted in the revised agreement. We judge that the primary purpose of the revised agreement was to establish a method for fixing orange juice concentrate prices.

Specifically, the parties agreed that "[c]oncentrate prices were rising with [o]range [juice] experiencing the largest increases" and that the parties would "discuss pricing and conditions outside the calendar dates specified in existing agreements." The agreement also contained the following language:

> "We are satisfied with the volume of sales we have achieved on juice products[;] however, Fearn believes passing cost increases on to its customers at the present time would hurt sales."

The revised agreement provided that orange juice prices would be determined by the future prices as published by the Wall Street Journal on certain specified dates and that the agreement would expire on December 31, 1988, if notice of termination was given by November

1, 1988. If notice of termination was given after November 1, 1988, the agreement would expire 60 days after either party notified the other of termination.

In the 10 months after the revised agreement was executed, the defendant purchased 32,078 cases (7.1% of the required amount of 450,000). On November 16, 1988, the defendant notified the plaintiff of its intent to terminate their relationship effective at the end of the year. Consequently, the defendant did not purchase any juice for what would have been the fifth year of the initial agreement.

On April 23, 1990, the plaintiff filed a complaint containing two counts: count I was a breach of contract claim which sought in excess of $3 million for profits lost due to the defendant's failure to meet the minimum purchase guarantee over the entire five years of the agreement; count II was captioned "Quantum Meruit," but the parties now agree that it was actually a promissory estoppel claim. In this count, the plaintiff alleged that it had "expanded its plant, purchased additional equipment, and retained services of additional employees" in reliance on the defendant's "promises and representations with respect to volume of total business." The plaintiff alleged that as a result of this reliance, substantial additional costs were incurred, that the defendant knew of these additional costs, and that the defendant did nothing to prevent the plaintiff from incurring these costs. The plaintiff alleged that the initial agreement's exclusivity provision prevented it from reducing its dependency on the defendant and sought $900,268 in damages.

The defendant filed a motion to dismiss the complaint under section 2–615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2–615.) In response to the breach of contract claim the defendant contended that (1) the initial agreement between the parties was merely an agreement to agree as there was no fixed price and the agreement would terminate in the absence of an agreement on price by the parties; (2) the revised agreement constituted a novation of the original agreement; and (3) the plaintiff waived its right to enforce the minimum quantity terms of the agreement.

In response to the plaintiff's promissory estoppel claim, the defendant contended that the plaintiff had waived its claim or that the revised agreement's novation of the initial agreement barred recovery.

On October 24, 1990, Judge Alan J. Greiman entered an order dismissing both counts of the plaintiff's complaint. Judge Greiman found that the plaintiff had alleged a valid contract; that the revised agreement, however, either modified or supplanted the original agreement;

and that the particular characterization of the revised agreement was not relevant because, whatever the characterization, the minimum quantity guarantees had been waived. He concluded that the plaintiff had no breach of contract cause of action for any sales prior to the revised agreement. He dismissed the contract claim but gave the plaintiff leave to amend to seek damages for sales after the revised agreement.

Judge Greiman then dismissed the plaintiff's promissory estoppel claim with prejudice. He determined that the plaintiff's reliance on the defendant's promise was not reasonable as a matter of law; he said that it was unreasonable for the plaintiff to expend almost a million dollars in reliance on such short-term contracts.

On October 31, 1990, the plaintiff filed an amended complaint that included only the breach of contract count, which strongly resembled the count dismissed by Judge Greiman, except for the amount of damages sought. In response to the plaintiff's amended complaint, the defendant filed a second section 2—615 motion and again contended that the initial agreement was merely an agreement to agree and that the quantity requirements contained in the agreement were modified by the revised agreement.

On April 15, 1991, Judge Jerome T. Burke dismissed the plaintiff's amended complaint with prejudice. Judge Burke found the minimum quantity requirements "did not survive the signing of the revised agreement." Judge Burke stated that the parties' course of conduct also supported a waiver of the minimum quantity requirements.

The plaintiff appeals Judge Greiman's order dismissing part of the contract claim and the promissory estoppel claim with prejudice and Judge Burke's order dismissing the remainder of the contract claim with prejudice. We will first address the appeal of Judge Greiman's order.

The defendant maintains that there was no contract of five years duration because the price was not settled at the time the agreement was made; instead, every four months the parties entered into a new contract when they agreed to a price. In substance, it is the defendant's position that the parties actually entered into an agreement to agree which was not a binding contract.

■■ To be enforceable, a contract must show a manifestation of agreement between the parties and be definite and certain in its terms. (*Academy Chicago Publishers v. Cheever* (1991), 144 Ill. 2d 24, 578 N.E.2d 981; *Trittipo v. O'Brien* (1990), 204 Ill. App. 3d 662, 672, 561 N.E.2d 1201.) When material terms and conditions are not ascer-

tainable, there is no enforceable contract, even if the intent to contract is present. (*Academy Chicago Publishers*, 144 Ill. 2d at 29; *Penzell v. Taylor* (1991), 219 Ill. App. 3d 680, 579 N.E.2d 956.) Under the Illinois Uniform Commercial Code (the Code), a contract for the sale of goods will not fail for indefiniteness, however, "if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ill. Rev. Stat. 1989, ch. 26, par. 2—204(3).

Here, the terms of the agreement are definite. All the essential elements of an agreement are present except for the price of the goods. The absence of the price term is the sole basis for the defendant's contention that no contract exists.

■ The Code, as adopted in Illinois, expressly addresses the situation where the parties deliberately leave the price term open. (Ill. Ann. Stat., ch. 26, par. 2—305, Illinois Code Comment, at 180-81 (Smith-Hurd 1963).) Section 2—305(1) of the Code provides that "[t]he parties *if they so intend* can conclude a contract for sale even though the price is not settled." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 26, par. 2—305(1)); see also *Alter & Sons, Inc. v. United Engineers & Constructors, Inc.* (S.D. Ill. 1973), 366 F. Supp. 959, 965.) In the case of an open price, the Code provides for a reasonable price at the time of delivery if, among other instances, "the price is left to be agreed by the parties and they fail to agree." Ill. Rev. Stat. 1989, ch. 26, par. 2—305(1)(b).

Section 2—305(4) provides an exception to the recognition of a contract when there is an open price term. (Ill. Rev. Stat. 1989, ch. 26, par. 2—305(4).) This section provides:

"Where, however, the parties intend not to be bound unless the price be fixed or agreed *and* it is not fixed or agreed there is no contract." (Emphasis added.)

In both section 2—305(1) and section 2—305(4), the intent of the parties is the dispositive factor in determining whether a contract is present. The plaintiff states that the question of the parties' intent as to contract formation is a factual question that cannot be decided on a section 2—615 motion.

The Code comments emphasize that the language of section 2—305(1) "if the parties so intend" must be read together with section 2—305(4). The comments conclude that whether the parties have intended to enter into a binding agreement "is, in most cases, a question to be determined by the trier of fact." Ill. Ann. Stat., ch. 26, par. 2—305, Uniform Commercial Code Comment, at 182 (Smith-Hurd 1963).

■ We believe that the complaint alleges an agreement that a fact finder could reasonably conclude manifested an intent of both parties to be bound by the agreement for five years, subject only to the condition subsequent of termination by the failure to agree on the price. (See 2 R. Anderson, Uniform Commercial Code §2—305:7, at 497 (3d ed. 1982).) The agreement provided that the plaintiff would not manufacture for sale nor sell to anyone other than the defendant. It also provided that the plaintiff would indemnify and hold harmless the defendant for any claims made against the defendant; that the plaintiff would carry product liability insurance; and that the agreement could not be assigned without the written consent of either party. Acceptance of the defendant's argument would require that we ignore the other parts of the contract. Most important, the interpretation urged on us by the defendant that, as a matter of law, the parties intended only to enter severable 120-day contracts would render the minimum quantity requirements of the initial agreement meaningless. We agree with Judge Greiman that the complaint alleged a contract.

The case cited by the defendant, *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc.* (N.D. Ill. 1986), 635 F. Supp. 1281, does not support the defendant's position. In fact, it supports the plaintiff's position here. In that case, the plaintiff filed a motion for summary judgment which was denied. One of the reasons for the denial was that "[a]t a minimum there [was] a factual issue on this point" of whether the parties " 'intend[ed] not to be bound unless the price be fixed or agreed.' " (*Quaker State*, 635 F. Supp. at 1286, quoting Ill. Rev. Stat. 1983, ch. 26, par. 2—305(4).) The judge held that a jury must decide that fact question.

■ The defendant also maintains that the contract lacks mutuality of obligation and is, therefore, unenforceable, citing *Wabash Chemical Corp. v. Scholle Chemical Corp.* (1966), 67 Ill. App. 2d 222, 214 N.E.2d 596 (abstract of opinion). That case also does not support the defendant's position. In *Wabash*, the agreement provided that if the parties failed to agree on the price, *only the seller* was excused from its obligations under the contract; the seller could reestablish the contract for the last agreed-upon price by sending notice to the buyer. In the case before us, *both* parties are excused from performance if the parties do not agree on the price of the goods.

■ The defendant alternatively argues that, assuming a valid contract, the plaintiff waived his right to the minimum quantity requirements by his conduct and by the revised agreement in February 1988. Reduced to its essentials, the defendant's argument is that the

facts establish waiver, as a matter of law, that is, that the defendant would have been entitled to a directed verdict in its favor if the alleged facts were before a jury.

A waiver is an intentional relinquishment of a known right which may be express or implied from the conduct of the party that has allegedly waived its right. (*Ryder v. Bank of Hickory Hills* (1991), 146 Ill. 2d 98, 585 N.E.2d 46.) The waiver of a contractual provision may be established by conduct indicating that strict compliance with the provision will not be required. *Community Convalescent Center of Naperville, Inc. v. First Interstate Mortgage Co.* (1989), 181 Ill. App. 3d 996, 537 N.E.2d 1162.

Both parties cite to section 2—208 of the Code, which addresses the course of performance. (Ill. Rev. Stat. 1989, ch. 26, par. 2—208.) Subsection 1 of this provision allows the course of performance of the parties to be considered in determining the meaning of the agreement when there have been "repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other." Ill. Rev. Stat. 1989, ch. 26, par. 2—208(1).

Subsection 2 of section 2—208 provides that the "express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance." Ill. Rev. Stat. 1989, ch. 26, par. 2—208(2).

Subsection 3 provides that "such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance." Ill. Rev. Stat. 1989, ch. 26, par. 2—208(3).

Relying on subsection 2, the plaintiff maintains that express terms of the contract, that is the minimum requirement provisions, control over any course of conduct. The plaintiff has misconstrued the issue as evidenced by its citation of *Consolidated Water Power & Paper Co. v. Louisville Herald* (1918), 211 Ill. App. 569 (abstract of opinion), in which the court was called upon to construe an agreement. The issue before us is not the meaning of the language of the minimum requirement provision; the issue is whether the minimum requirement provisions were waived.

The contract between the parties extended over a four-year period and involved at least three opportunities every year where the agreement would not continue unless an agreement on price was reached. The plaintiff knew exactly how much the defendant was buy-

ing and that the defendant had not come close to the minimum purchase guarantees established in the agreement during any year of the contract.

On January 20, 1988, with full knowledge that the defendant had not complied with the minimum purchase guarantees, the plaintiff signed an agreement which provided that the parties had agreed that "[w]e are satisfied with the volume of sales we have achieved on the juice products." The agreement also provided that it "reflects understandings between the parties as to pricing and other conditions as noticed herein, but does not otherwise alter or modify" the initial agreement.

The plaintiff contends that the determination of whether those facts constituted a waiver of the minimum purchase requirements is a question of fact incapable of being decided on a motion to dismiss under section 2—615. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) The question of waiver is a question of fact when the material facts are in dispute or when "reasonable minds" differ from the inferences drawn from undisputed evidence. (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 335 N.E.2d 491.) Where there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of waiver is a matter of law. *Wells v. Minor* (1991), 219 Ill. App. 3d 32, 578 N.E.2d 1337.

Waiver, like estoppel, is an equitable doctrine and in contract law is designed to prevent the waiving party from "lull[ing] another into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance." (*Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991.) The Code comments are instructive:

> "Where it is difficult to determine whether a particular act merely sheds light on the meaning of the agreement or represents a waiver of a term of the agreement, the preference is in favor of 'waiver' whenever such construction, plus the application of the provisions on the reinstatement of rights waived (see Section 2—209), is needed to preserve the flexible character of commercial contracts *and to prevent surprise or other hardship.*" (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 2—208, Uniform Commercial Code Comment, at 156-57 (Smith-Hurd 1963).

Judge Greiman's finding of waiver is consistent with the underlying policy of the waiver doctrine. In this case, the agreement could have been terminated every four months if no price was agreed to by the parties. Instead of seeking compliance with the provisions of the

contract after the first year, the plaintiff decided to accept the defendant's inadequate performance. If the plaintiff had informed the defendant at the end of the first year that it would insist on performance of the minimum quantity requirements, the defendant would have been in a position to cut its losses by opting out of the contract. Instead, the plaintiff lulled the defendant into believing that strict compliance would not be required and then "surprised" the defendant by filing suit 17 months after notice of termination for the entire four-year period. Moreover, it is reasonably inferable that the defendant would not have entered into the revised agreement if it had been informed at any time before January 20, 1988, that the plaintiff would insist on compliance with the minimum purchase requirements provision of the original agreement. In our judgment, the course of conduct of the plaintiff in failing to object to noncompliance, coupled with the revised agreement, establishes waiver as a matter of law.

We are aware that a case should not be dismissed pursuant to section 2—615 unless the plaintiff could not recover under any of the facts pleaded. We see no distinction in this case, however, between a motion to dismiss or a motion for summary judgment. The facts are not in dispute. (*Cf. Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank* (1988), 168 Ill. App. 3d 1000, 523 N.E.2d 117 (waiver determined by summary judgment upheld).) For these reasons, the order of Judge Greiman dismissing count I is affirmed.

■ Count II was based on a claim of promissory estoppel. In order to establish a cause of action for promissory estoppel, the plaintiff must prove (1) an unambiguous promise by the defendant to the plaintiff, (2) the plaintiff's reliance on such promise, (3) that the plaintiff's reliance was expected and foreseeable by the defendant, (4) that the plaintiff's reliance was detrimental, and (5) that the plaintiff's reliance was reasonable and justified. (*Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) In dismissing the promissory estoppel claim, Judge Greiman held, as a matter of law, that the plaintiff's complaint should be dismissed because there could be no reasonable reliance by the plaintiff based on the facts alleged in the complaint. The plaintiff maintains correctly that in determining whether the dismissal of a claim is proper, all well-pleaded facts are accepted as true and must be viewed in the light most favorable to the plaintiff. (*I K Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 558 N.E.2d 161.) Therefore, the plaintiff argues, whether its reliance on the defendant's promise was reasonable was a question of fact that should not be decided on a motion to dismiss.

The defendant maintains that the promise it made to the plaintiff was ambiguous and that the judge's decision that the plaintiff's reliance on the defendant's promise was unreasonable as a matter of law was correct. We have already determined that the defendant's promise was not ambiguous and, therefore, reject that part of the defendant's argument. But we have also determined that we need not decide whether the plaintiff's reliance was reasonable, because we have also determined that the order dismissing the promissory estoppel claim should be affirmed, but on a ground not raised by the parties.

We recognize the general rule that points not raised by the parties are waived. That rule is a limitation on the parties, not on the jurisdiction of a reviewing court. The responsibility of a reviewing court for a just result and for the maintenance for a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) Because recognition that the plaintiff may maintain a promissory estoppel claim could have far-reaching precedential effect, we deem the general waiver rule inapplicable here.

Count I alleged a breach of the promise to purchase minimum quantities of fruit concentrate and sought damages for lost profits totalling in excess of $3 million. Count II alleged that the plaintiff bought machinery and hired additional employees at a cost in excess of $900,000 in reliance on the defendant's promise to purchase minimum quantities; the plaintiff also alleged that it was damaged in excess of $900,000 because of the defendant's breach of its promise. Thus, the plaintiff pleads two separate causes of action for two separate awards of damages based on the same wrongful act.

We recognize that a party may plead in the alternative. For comparison purposes we refer to *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990, in which the plaintiff filed a complaint in one count for breach of contract and in another count an action under promissory estoppel. The damages sought under each count were identical: the lost profits and the sums expended by the plaintiff in procuring the contract *and in preparing to perform under the contract*. It is obvious that the claims were alternative claims. The plaintiff could not properly have claimed recovery under both.

We have held, at the plaintiff's urging, that count I was based on an unambiguous promise and was an enforceable contract at the time the parties entered into it. That being so, the question before us is whether a party may maintain a breach of contract action *and* a

promissory estoppel claim based on the breach of the same promise. We have found only one Illinois case even analogously in point, *Barker-Lubin Co. v. Wanous* (1960), 26 Ill. App. 2d 151, 167 N.E.2d 797 (abstract of opinion), which involved a contract dispute about the price. It was the defendant who invoked the doctrine of promissory estoppel. In rejecting the defendant's claim, the appellate court said this:

> "[Promissory estoppel] is a theory of law by which a person may be held liable upon a promise, for which there is no consideration. The theory was that, if the promise is made with the intent that it be relied upon, and the promisee does rely upon it and puts himself in a position where grave injustice would result if the promise is not kept, it may be enforced. This has nothing to do with contract law where there is a consideration, such as mutual promises.
>
> The name, 'Promissory Estoppel' is modern, but the doctrine had existed in some jurisdictions for many years. It has not received much attention in Illinois, and we do not go into it further in this case, because *the doctrine has never been considered available when the parties have entered into a contract which is binding under contract law. Union Mutual Life Ins. Co. v. Mowry, 96 U.S. 544, 24 L. Ed. 674.*" (Emphasis added.) Slip op. at 8.

In addition to *Union Mutual Life Insurance Co. v. Mowry*, cited in *Barker-Lubin*, there are cases from other jurisdictions reflecting the same views expressed in *Barker-Lubin*. In *General Aviation, Inc. v. Cessna Aircraft Co.* (6th Cir. 1990), 915 F.2d 1038, the plaintiff sued for breach of contract, and later maintained that it could prevail under promissory estoppel. The court of appeals affirmed the district court's denial of the promissory estoppel claim:

> "[The plaintiff's] theory is that [the defendant's] oral promises to treat it fairly and equally with other dealers caused it to rely to its detriment on those promises. Relying on *Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984), the District Court found that 'where ... the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable.' *General Aviation*, 703 F. Supp. at 647 n.10.

In other words, [the plaintiff] agreed to forego its future dealings with Beech Aircraft in order to enter into a written contract which, by its own terms, was a full and complete ex-

pression of the parties' intentions. [The plaintiff] knew exactly what it was getting into because each and every term was spelled out in black and white in the contract. 'Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.' *Walker*, 728 F.2d at 1220." *General Aviation*, 915 F.2d at 1042.

*Walker v. K F C Corp.* (9th Cir. 1984), 728 F.2d 1215, cited in *General Aviation*, interpreted California law and relied on *Youngman v. Nevada Irrigation District* (1969), 70 Cal. 2d 240, 449 P.2d 462, 74 Cal. Rptr. 398. In *Youngman*, the supreme court of California reversed the dismissal of a breach of contract claim and held, as we do here, that the plaintiffs had pleaded a valid contract. But the court affirmed the dismissal of the count of the complaint which sought relief under a promissory estoppel theory. In doing so, the court spoke as follows:

"The purpose of [the doctrine of promissory estoppel] is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." (70 Cal. 2d at 249, 449 P.2d at 468, 74 Cal. Rptr. at 404.)

The court pointed out that the plaintiff's allegations established that he had performed his part of the bargain and rendered the consideration called for by the contract. The court added, "[t]here is no occasion, therefore, to rely upon the doctrine of promissory estoppel, which is necessary only to supply consideration for a promise when no actual consideration was given by the promisee." 70 Cal. 2d at 250, 449 P.2d at 469, 74 Cal. Rptr. at 405.

In the case before us, the plaintiff performed its part of the bargain and thereby rendered its consideration. There is no reason, therefore, to rely on promissory estoppel.

We judge that relief under promissory estoppel is not available to the plaintiff under these facts. We are not persuaded to hold otherwise because the plaintiff has alleged separate damages for the same act, in effect, splitting its cause of action. Acceptance of the plaintiff's argument would mean that whenever a contract for a sale of goods is breached and the seller has incurred start-up costs, the seller has a cause of action for lost profits under a breach of contract claim and at the same time a cause of action based on promissory estoppel for the start-up costs. We cannot accept that argument. For these reasons, the order of Judge Greiman dismissing count II is affirmed.

■ We turn now to the order dismissing the amended complaint. Judge Greiman dismissed the complaint entirely but granted leave to amend. He was sure that the minimum requirements provision had been waived for the period up to the signing of the revised agreement on January 20, 1988, but he was not sure that there was a waiver for the period after the signing of the revised agreement. He said it might "be we require evidence" and granted leave to file an amended complaint. Judge Jerome T. Burke replaced Judge Greiman. Again the defendant argued that there was no enforceable contract in the first place and that, if there was, the minimum requirement provision had been waived.

Judge Burke pinpointed the issue when he said that the "plaintiff wanted to salvage its minimum requirement" in the revised agreement. The defendant's attorney agreed but argued that the plaintiff did not do so. In dismissing the complaint Judge Burke held that the minimum quantities guarantee did not survive the signing of the revised agreement; he also held that "with respect to waiver, the course of conduct, is availing in favor of the defendant."

In our judgment, whether the parties intended to remove the minimum quantities requirement when they entered into the revised agreement is a question of fact. The revised agreement recited that the parties "are satisfied with the volume of sales we *have achieved* on the juice products." (Emphasis added.) The agreement also provided that it "reflects understandings between the parties as to pricing and other conditions as noted herein, but does not otherwise alter or modify" the initial agreement. To accept the defendant's argument, we would be required to say that when the plaintiff said it was "satisfied with the volume of sales we have achieved," it meant it was satisfied with what it had received but would also be satisfied with whatever amount of cans of juice concentrate the defendant might order in the future. This is a construction of the plaintiff's language we are unwilling to accept as a matter of law.

Nor do we agree that the plaintiff's conduct before the revised agreement constituted waiver of the future minimum quantity requirements as a matter of law. If the defendant's interpretation of the effect of the revised agreement is correct, whether the plaintiff's conduct before the revised agreement constituted waiver becomes moot. If the fact finder, however, accepts the plaintiff's interpretation, that is, that the plaintiff intended to retain the minimum quantities requirement, there obviously could be no future waiver of the requirement. We judge, therefore, that a fact question remains under the amended complaint that could not be resolved on the basis of what

was presented to the judge. For that reason, the order dismissing the amended complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part; reversed in part and remanded.

McNAMARA* and RAKOWSKI, JJ., concur.

---

*Justice Rosemary LaPorta participated in oral argument prior to her death. Justice Daniel J. McNamara was substituted on the panel and has listened to the oral argument tape and has read the briefs.