HAWTHORNE PARTNERS, an Illinois General Partnership, Plaintiff,

v.

AT & T TECHNOLOGIES, INC., a New York Corporation, and ENSR Corporation, a Delaware Corporation, Defendants.

No. 91 C 7167.

United States District Court, N.D. Illinois.

Aug. 25, 1993.

Dan K. Webb, Nancy MacKimm Kollar, Howard Michael Pearl, Winston & Strawn, Chicago, IL, James A. Vroman, Jenner & Block, Chicago, IL, for Hawthorne Partners.

Byron L. Gregory, Steven Henry Hoeft, Diane Katharyne Moore, McDermott, Will & Emery, P.C., Chicago, IL, for AT & T Technologies, Inc.

Russell R. Eggert, Tyrone C. Fahner, Mark R. Ter Molen, Michael Paul Rissman, Victoria R. Collado, Mayer, Brown & Platt, Chicago, IL, for ENSR Corp.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this diversity action, plaintiff Hawthorne Partners sues defendants AT & T Technologies, Inc. ("AT & T") and ENSR Corporation ("ENSR") (collectively "defendants") to recover damages resulting from defendants' alleged breach of two contracts: (1) a real estate sales agreement between Hawthorne Partners and AT & T; and (2) a contract between AT & T and ENSR regarding an environmental audit and cleanup plan. Defendants jointly move *in limine* to (1) exclude expert opinions of Neil D. Williams on the reasonableness of the remedial work and the expected costs of designing and implementing soil and groundwater remediation efforts; (2) exclude evidence of the negotiations over and the terms of the effort to refinance the shopping center through Mutual of New York ("MONY"); (3) exclude evidence of the negotiations over and the terms of the failed sale of the shopping center to the State Teachers Retirement System of Ohio ("Teachers Retirement"); (4) exclude testimony as to any responsibility of AT & T or ENSR for remediation of building interiors on the Hawthorne Works property; (5) exclude evidence of agency relating to the conspiracy claim and for judgment as a matter of law on the conspiracy claim. AT & T also moves *in limine* to exclude evidence of purported pre-contract and post-contract representations and any specific reliance thereon in support of the detrimental reliance claim or, in the alternative, for judgment as a matter of law on the detrimental reliance claim. Hawthorne Partners moves to exclude changes to the deposition of Angelo Basile or, in the alternative, for leave to reopen the deposition.

## BACKGROUND

In 1985, Hawthorne Partners agreed to purchase property known as the Hawthorne Works from AT & T. The real estate sales agreement ("the agreement") provided that AT & T would perform an environmental audit to identify material adverse environmental conditions on the property and would develop and implement a plan for the reasonable reduction of such conditions. AT & T hired ENSR to perform the audit, develop the plan, and supervise the remedial work. The property was contaminated by volatile organic compounds and remedial work was conducted. Thereafter, Hawthorne Partners constructed a shopping center on the Hawthorne Works property. Hawthorne Partners alleges that defendants breached their promise to reasonably reduce the adverse environmental conditions on the property and failed to comply with the technical specifications set forth in the audit and remediation plan. Hawthorne Partners asserts that it must remediate the soil to complete the work defendants failed to perform.

## MOTIONS IN LIMINE

■ This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.

*See The Middleby Corp. v. Hussmann Corp.,* No. 90 C 2744, 1993 WL 151290, at *1, 1993 U.S.Dist. LEXIS 6150, at *1–2 (N.D.Ill. May 5, 1993). *See generally* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* ¶¶ 5037, 5042 (1977 & Supp. 1993). Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine.* *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989), citing *Luce,* 469 U.S. at 41, 105 S.Ct. at 463 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

**1. Expert Opinions Of Neil D. Williams**

■ Hawthorne Partners has hired Dr. Neil D. Williams, the Chief Executive Officer and President of GeoSyntec Consultants, as an environmental consultant. Hawthorne Partners believes that Dr. Williams' testimony will aid the jury in deciding the adequacy of the environmental work performed by defendants and the costs of remedying the defendants' deficiencies. These are central issues in the case. Dr. Williams is expected to give his opinion of (1) the reasonableness of the remedial work and (2) the costs to Hawthorne Partners to complete the environmental audit ($110,000) and remedial work ($1,010,000). Defendants contend that Dr. Williams' opinions should be barred because (1) the agreement provided that an independent environmental consultant would be the arbiter of reasonableness and (2) Dr. Williams' $1,010,000 estimate of the cost of remedial work is speculation and conjecture.

First, Hawthorne Partners is not barred by the agreement from having Dr. Williams testify as to the reasonableness of the environmental audit, plan, and remedial work. Defendants want the agreement language to encompass far more than its words plainly state. The agreement directs Hawthorne Partners and AT & T each to review the reasonableness of the audit, plan, and estimated costs and use their best efforts to agree on any changes to the plan within fifteen days after Hawthorne Partners' receipt of the information. Defendants' Williams Mot., Exh. B, ¶ 5(b)(i). If the parties cannot agree within this time frame, the agreement instructs them immediately to submit the matter to a named environmental consultant or another mutually acceptable environmental consultant for resolution within 30 days. *Id.* Since it is now well past 15 days from the February 26, 1986 deadline for AT & T's delivery to Hawthorne Partners of the estimated costs of the remedial work, the agreement provision is ineffective. *See id.* Defendants' argument fails because the agreement does not provide that all disputes will be submitted to an independent environmental consultant; instead it provides a remedy for very specific disputes in a limited timeframe that has now passed.

■ Second, defendants' claim that Dr. Williams' $1,010,000 estimate of the cost of completing the remedial work should be excluded also fails. Defendants argue that the estimate is mere speculation, but the estimate is based on defendants' own audit and related work papers. This court has broad discretion in determining the admissibility of expert testimony under Fed.R.Evid. 702. *Stutzman v. CRST, Inc.,* 997 F.2d 291, 295 (7th Cir.1993) (citations omitted). Rule 703 of the Federal Rules of Evidence allows experts to use material they would normally rely on in forming opinions when they form their opinions for trial. *Id.* at 296; *United States v. Bramlet,* 820 F.2d 851, 856 (7th Cir.), *cert. denied,* 484 U.S. 861, 108 S.Ct. 175, 98 L.Ed.2d 129 (1987). Environmental consultants often use reports and audits prepared by other environmental consultants in forming their opinions, and Dr. Williams is allowed to follow that practice in this case. Dr. Williams may certainly form an opinion based on the information defendants themselves prepared. Dr. Williams' opinion that remedial work will cost $1,010,000 is not excluded as speculation. However, the weight to be accorded Dr. Williams' opinion is a matter for the jury to resolve. The accuracy of expert testimony is a matter of weight

rather than admissibility. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1308 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989). The proper time to challenge the accuracy and reliability of an expert opinion is at trial; defendants will have ample opportunity to challenge Dr. Williams on cross-examination. *See Harbor Ins. Co. v. Continental Bank Corp.,* 1991 WL 222260, at *6 (N.D.Ill. Oct. 25, 1991).

**2. Negotiations Over And The Terms Of The Effort To Refinance The Shopping Center Through Mutual Of New York**

■ Hawthorne Partners unsuccessfully tried to refinance the shopping center through MONY in 1989. Hawthorne Partners offers to show that MONY terminated the deal because (1) defendants had not remediated the property to the levels required by the technical specifications in the plan and (2) the audit failed to disclose and evaluate groundwater contamination. Defendants jointly move to exclude evidence of the negotiations between Hawthorne Partners and MONY and the terms of the refinancing effort as not probative or, if such evidence is probative, as more prejudicial than probative.

Hawthorne Partners contends that this court's denial of defendants' motions for summary judgment preserved this issue for the jury to decide at trial. Plaintiff's MONY and Teachers Retirement Resp. at 2. When this court denied the motions for summary judgment, it did not rule specifically on any particular issue; it merely stated that there were a number of contentious factual issues that could not be resolved on a motion for summary judgment. Minute Order, April 28, 1993. The denial of summary judgment does not automatically resolve this motion *in limine* in Hawthorne Partners' favor. It is necessary to consider the motion on its merits.

Hawthorne Partners contends that refinancing was derailed by MONY's environmental concerns. MONY's environmental engineer investigated the property and the remedial work done by defendants as part of MONY's due diligence during the negotiations. An internal MONY memorandum disagrees with ENSR's conclusions that there is

no groundwater contamination and that any remaining contamination is harmless. *Id.,* Exh. 4.

The evidence of the attempted refinancing through MONY is relevant under Fed. R.Evid. 402. Hawthorne Partners asserts that the evidence of the failed MONY deal confirms that the value of the property is diminished as a result of defendants' deficient work. Defendants claim this evidence is not probative of the diminution of the property's market value or the materiality of AT & T's breaches of its contract with Hawthorne Partners. Yet defendants do not explain why this evidence is not probative. The proffered evidence appears to buttress Hawthorne Partners' claims. If defendants dispute MONY's rationale for not completing the refinancing, they may impeach MONY on cross-examination.

The probative value of this evidence is not substantially outweighed by prejudice. Fed. R.Evid. 403. Defendants argue that allowing this evidence would confuse the jury and unfairly prejudice defendants since the evidence may persuade the jury to award damages to Hawthorne Partners based on the failed MONY refinancing. However, as Hawthorne Partners points out, defendants may use Hawthorne Partners' own statements to impress upon the jury that Hawthorne Partners should not be awarded damages based on the failed MONY refinancing. *See* Defendants' MONY Mot., Exh. A, Plaintiff's Memorandum in Opposition to Defendant AT & T's Summary Judgment Motion at 30–31; Plaintiff's MONY and Teachers Retirement Resp., Exh. 5, Final Pretrial Order, Plaintiff's Statement of Contested Issues of Fact and Law Not Agreed To, ¶ 45.

**3. Negotiations Over And The Terms Of The Failed Sale Of The Shopping Center To The State Teachers Retirement System of Ohio**

■ This motion is similar to the MONY motion. Hawthorne Partners unsuccessfully tried to sell the shopping center to Teachers Retirement in 1989. Hawthorne Partners seeks to show that Teachers Retirement terminated negotiations because (1) defendants had not remediated the property to the levels

required by the technical specifications in the plan and (2) the audit failed to disclose and evaluate groundwater contamination. Defendants jointly move to exclude evidence of the negotiations between Hawthorne Partners and Teachers Retirement and the terms of the failed sale as not probative or, if probative, as more prejudicial than probative.

As with the MONY motion, it is necessary to consider the merits of this *in limine* motion. The facts make this a closer call than the MONY motion. The letter of intent between Hawthorne Partners and Teachers Retirement expressly conditioned Teachers Retirement's purchase of the shopping center property on an environmental assessment verifying that there was no evidence of hazardous materials on the property. Defendants' Teachers Retirement Mot., Exh. C, Final Pretrial Order, Agreed Statement of Uncontested Facts, ¶ 46. Teachers Retirement's formal hazardous materials policy required certification that the property be free from hazardous material or, if it had been contaminated, that remediation had rendered it free from contamination. *Id.*, Exh. H, Plaintiff's Trial Exhibit 153. Defendants maintain that this strict policy prohibited Teachers Retirement from purchasing the property even if defendants had fulfilled their obligations, since the remedial work plan did not contemplate removing all contamination from the property. Hawthorne Partners contends that Teachers Retirement's seemingly strict policy was actually somewhat flexible. Hawthorne Partners points out that Teachers Retirement knew the property had formerly been the site of a manufacturing facility, so it was on notice that there might be contamination. Plaintiff's MONY and Teachers Retirement Resp., Exh. 2. Hawthorne Partners also asserts that Teachers Retirement contemplated going through with a transaction that did not meet all the requirements of the policy. *Id.*, Exh. 3.

As with the MONY motion, evidence of the failed sale to Teachers Retirement appears relevant under Fed.R.Evid. 402. Evidence of the failed sale may confirm Hawthorne Partners' claim that the value of the property is diminished as a result of defendants' deficient work. Defendants may use the strict hazardous materials policy to impeach this evidence. The probative value of this evidence is not substantially outweighed by prejudice. Fed.R.Evid. 403.

### 4. Responsibility Of Defendants For Remediation Of Building Interiors On The Property

Defendants move to exclude testimony regarding their responsibility for remediation of the interior of the Cable Plant building on the property. Defendants contend that this lawsuit relates only to those parts of the agreement regarding the environmental conditions of the soil and groundwater. They further contend that Hawthorne Partners' amended complaint does not allege that defendants had responsibility for remediation of any building interiors. If defendants' contentions are correct, then Hawthorne Partners' claims for damages resulting from the contamination in the Cable Plant must be barred.

Hawthorne Partners argues that the building interiors are covered by the agreement and are properly within the scope of this lawsuit. AT & T promised to deliver the buildings "in a physical condition normal for transfers of buildings and improvements of this age, type and kind." Plaintiff's Building Resp., Exh. 4, ¶ 7(b)(iv). Hawthorne Partners notes that it understood the language of the agreement to encompass remediation of building interiors. *Id.*, Exh. 1 at ¶¶ 3–5. In addition, Hawthorne Partners' complaint, amended complaint and second amended complaint all describe the discovery of lead dust in the Cable Plant, AT & T's refusal to remediate the lead dust, and Hawthorne Partners' assertion that it spent $65,000 to remediate the lead dust and related soil contamination.[1] Complaint, Amended Com-

---

1. In its response to this motion, Hawthorne Partners states that Clayton Environmental Consultants, Inc. discovered the lead-contaminated dust while working as a consultant for Angeles Partners, a prospective buyer of the Cable Plant. Hawthorne Partners attaches to its response an affidavit of Donald L. Shoemaker that mentions Clayton and a report from Clayton. However, in its various complaints, Hawthorne Partners states that Jacobs Engineering, also an environmental consultant, discovered the contaminated dust in the Cable Plant and soil in the vicinity of

plaint, and Second Amended Complaint, ¶¶ 26–28.

The contamination of the Cable Building is part of this lawsuit. Hawthorne Partners agreed to buy the Hawthorne Works property from AT & T. The property included the Cable Plant and other buildings as well as the land on which Hawthorne Partners constructed the shopping center. Defendants were put on notice of Hawthorne Partners' claims regarding the Cable Plant by the complaints. In addition, Hawthorne Partners and defendants include the reduction in the purchase price of the Cable Plant and Hawthorne Partners' out-of-pocket expenses for completing defendants' remedial work in their list of contested issues of fact. Final Pretrial Order, Agreed Statement of Contested Issues of Facts and Law, ¶ 22. Defendants cannot say Hawthorne Partners is unfairly springing a new claim upon them at this late date. The claim is not new and it is properly within the scope of this lawsuit. Defendants' motion to exclude testimony that they had any responsibility for the remediation of the Cable Plant is denied.

## 5. The Conspiracy Claim

■ Defendants jointly move (1) to exclude evidence of agency relating to Hawthorne Partners' conspiracy claim and (2) for a judgment as a matter of law on the conspiracy claim. The court first addresses the motion for judgment as a matter of law. Defendants argue that a principal and agent cannot conspire within the scope of the agency and that Hawthorne Partners has admitted that ENSR acted as an agent of AT & T with respect to soil removal decisions and

actions. Defendants assert the conspiracy claim is legally impossible and must fail under Fed.R.Civ.P. 50(a).

This motion has been complicated by other developments in the case. This motion was filed on June 15, 1993, and answered July 6, 1993. Defendants rely on the amended complaint, in which the conspiracy claim is based only on defendants' alleged decision to leave contaminated soil on the property. Amended Complaint ¶ 46. Hawthorne Partners filed its second amended complaint on July 26, 1993. The second amended complaint added to the conspiracy claim the allegation that defendants conspired to conceal indications of groundwater contamination. Second Amended Complaint ¶ 43. Thus, defendants' motion to bar the conspiracy claim does not address the groundwater allegation. Defendants' motion is moot because the conspiracy claim now includes both soil and groundwater allegations.

In addition, the motion is substantively without merit. There can be no conspiracy between principal and agent within the scope of the agency relationship.[2] *Balabanos v. North American Investment Group, Ltd.,* 708 F.Supp. 1488, 1495 (N.D.Ill.1988). Hawthorne Partners does not dispute this point. Plaintiff's Conspiracy Resp. at 2. The parties have agreed to a jury instruction that states: "A principal and its agent are not legally capable of entering into a conspiracy regarding a matter within the scope of the agency." Defendants' Conspiracy Mot., Exh. C, Final Pretrial Order, Joint Final Jury Instructions, No. 8.

However, an agent and principal can conspire when the agent acts outside the scope

the Cable Plant, and that the buyer was C.M. Complex Joint Venture.

**2.** This statement is not true in all cases. For example, the Seventh Circuit has stated in a case involving employment discrimination under 42 U.S.C. § 1985(3):

We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding. Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon.

*Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972). *Dombrowski* means that "coconspira-

tors may not create a principal for whom they are agents in order to make their acts all the acts of a single person that cannot be charged with conspiring with itself." *Walker v. Woodward Governor Co.,* 631 F.Supp. 91, 94 (N.D.Ill.1986), citing *Cole v. University of Hartford,* 391 F.Supp. 888, 893 (D.Conn.1975).

In addition, there is a line of antitrust cases holding that "corporate agents acting within the scope of their employment are held capable of conspiring when they act 'on their own' behalf or with an 'independent personal stake' in the corporate action." *Hartman v. Board of Trustees,* 4 F.3d 465, 469–70 (7th Cir.1993) (citations omitted).

of the agency. *See, e.g., Morrison v. Murray Biscuit Co.,* 797 F.2d 1430, 1438 (7th Cir. 1986); *Nagy v. Riblet Products Corp.,* 1992 WL 318604, at *5 (N.D.Ill. July 12, 1992). Hawthorne Partners maintains that ENSR's activities related to soil removal were not within the scope of the agency and defendants' joint actions regarding soil removal are subject to conspiracy liability. Defendants allege ENSR acted within the scope of its agency relationship with AT & T regarding soil removal and that Hawthorne Partners has admitted as much.

Defendants' motion relates to the conspiracy allegation that "AT & T ... and ... ENSR conspired and agreed among themselves to deviate from the provisions of the Plan ... when they agreed among themselves in August and September of 1986 and, again, in October of 1987 to leave soil on the Hawthorne Works property contaminated ... in excess of the clean-up criteria levels of the Plan." Amended Complaint ¶ 46. Defendants point to Hawthorne Partners' purported admissions in its amended complaint: (1) that before the soil analysis was complete, ENSR, "pursuant to the directions and instructions of its principal, Defendant AT & T Technologies, Inc.," left soil under the TCE tank in place; and (2) that in the three instances, AT & T "directed its agent, Defendant ENSR," to leave contaminated soil on the property. Defendants' Conspiracy Mot., Exh. A, Amended Complaint ¶¶ 18, 39; Second Amended Complaint ¶¶ 18, 39. Defendants also point to Hawthorne Partners' purported admissions in the parties' agreed statement of contested facts:

10. Whether Hawthorne Partners was a third party beneficiary of the contract or contracts between AT & T and ENSR requiring ENSR to supervise, as AT & T's authorized representative, the performance of remedial work in 1986.

11. Whether Hawthorne Partners was a third party beneficiary of the contract or contracts between AT & T and ENSR for ENSR to supervise, as AT & T's authorized representative, the performance of remedial work in the former Building No. 40 area in 1987.

Defendants' Conspiracy Mot., Exh. B, Final Pretrial Order, Agreed Statement of Contested Issues of Fact and Law, ¶¶ 10–11.

Hawthorne Partners contends that the agency relationship between AT & T and ENSR was very limited, and the decision to leave contaminated soil on the property was not within the scope of the agency; thus, defendants had the legal ability to enter into a conspiracy. Hawthorne Partners points to a letter outlining ENSR's (then ERT's) responsibilities to buttress its contention that the agency was narrow. Plaintiff's Conspiracy Resp., Exh. 2. The letter gives ENSR power to supervise and oversee Chem Waste, the contractor that performed the remediation, but no power to make decisions about the extent of the remediation. Hawthorne Partners argues that the statements in its complaints and the final pretrial order are not admissions; they are merely evidence that ENSR was AT & T's agent for the limited purpose outlined in the letter.

Under Rule 50(a), this court must view the evidence and draw all inferences in the light most favorable to Hawthorne Partners; defendants' motion must be denied if reasonable jurors could differ on the conclusion to be drawn. *Benson v. Allphin,* 786 F.2d 268, 279 (7th Cir.), *cert. denied,* 479 U.S. 848, 107 S.Ct. 712, 93 L.Ed.2d 109 (1986). Taking Hawthorne Partners' assertions as true, reasonable jurors could conclude that ENSR's agency relationship with AT & T was limited and defendants acted outside the scope of their agency relationship in deciding to leave contaminated soil on the property. That it is at least equally possible for reasonable jurors to find that the agency was broader than the specific outlines of the letter is not relevant for purposes of this motion.

In the second amended complaint, the conspiracy claim alleges concealing groundwater contamination in the audit as well as failing to remediate soil to the specifications directed by the plan. Hawthorne Partners asserts that ENSR did not act as AT & T's agent while preparing the audit, Plaintiff's Conspiracy Resp. at 3 n. 1, so the alleged groundwater coverup also states a conspiracy claim. Had defendants' Rule 50(a) motion included

the groundwater allegation, the motion would still have been denied.

■ Defendants' motion also seeks to exclude evidence regarding agency relating to the conspiracy claim. This motion is denied. The conspiracy claim hinges on the scope of the agency relationship between defendants. The scope of the agency is a relevant and highly probative question of fact.

**6. Detrimental Reliance Claim**

■ AT & T moves (1) to exclude evidence of purported pre- and post-contract representations and any specific reliance thereon or, in the alternative, (2) for judgment as a matter of law on the detrimental reliance claim. AT & T asserts that Hawthorne Partners makes the same claim twice—once in its breach of contract claim (Count I) and again in its detrimental reliance claim (Count IV)— and that duplication is barred by *Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 235 Ill.App.3d 224, 176 Ill.Dec. 258, 266–67, 601 N.E.2d 956, 964–65 (1st Dist.1992). Hawthorne Partners argues that its claims are alternative rather than duplicative, and that *Wagner* allows pleading breach of contract and detrimental reliance in the alternative.

*Wagner* precluded a plaintiff from pleading both breach of contract and promissory estoppel, seeking damages based on each claim, when both causes of action were based on the same wrongful act. *Wagner*, 176 Ill.Dec. at 266, 601 N.E.2d at 964. The court held that promissory estoppel was not available, explaining that:

> [a]cceptance of the plaintiff's argument would mean that whenever a contract for a sale of goods is breached and the seller has incurred start-up costs, the seller has a cause of action for lost profits under a breach of contract claim and at the same time a cause of action based on promissory estoppel for the start-up costs. We cannot accept that argument.

*Id.* at 267, 601 N.E.2d at 965. More simply, a plaintiff may recover under either theory but not both. However, the *Wagner* court recognized that a plaintiff may plead breach of contract and promissory estoppel in the alternative, *id.* at 266, 601 N.E.2d at 964, as

Hawthorne Partners has done. That the damages are identical under both claims is not reason to dismiss the detrimental reliance claim. *Id.; see also First Nat'l Bank v. Sylvester*, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 31–32, 554 N.E.2d 1063, 1070–71 (1st Dist.), *appeal denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990).

■ AT & T also argues that since the parties have stipulated that the agreement is an enforceable contract, there is no need for a detrimental reliance claim. Defendant's Detrimental Reliance Mot., Exh. C, Final Pretrial Order, Agreed Statement of Uncontested Facts, ¶ 14. Yet, as Hawthorne Partners counters, the specific terms of the plan and audit are not in the agreement, so they are not automatically enforceable by virtue of the stipulation that the agreement is valid. Plaintiff's Detrimental Reliance Resp. at 5. The detrimental reliance claim is not barred as a matter of law, and evidence regarding pre- and post-contract representations are relevant and highly probative in the jury's assessment of the claim.

***MOTION TO EXCLUDE CHANGES TO OR REOPEN DEPOSITION***

■ Hawthorne Partners moves to exclude changes to the deposition of Angelo Basile or, in the alternative, for leave to reopen the deposition. Basile, an AT & T employee, was deposed for three days over a four-month period ending February 5, 1993. The court reporter notified AT & T that the transcript was available on February 24, 1993. Basile reviewed the transcript, made changes, and signed the cover form on May 13, 1993.

Fed.R.Civ.P. 30(e) allows a witness to make "any changes in form or substance" to a deposition transcript but requires a statement of reasons for making them. A witness can make changes that contradict the original answers, and the reasons given need not be convincing. *Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D.Ill.1981). However, there must be a reason for every change:

> [i]t is not enough for the witness to give general conclusory reasons for all the changes at the end of the transcript—or ... for the witness to record no reasons at

all upon the deposition but merely to claim later that the reasons are 'either explicit or reasonably implied from the circumstances.' Instead, the witness must state the specific reason for the particular change after *each* modification.

*Sanford v. CBS, Inc.,* 594 F.Supp. 713, 715 (N.D.Ill.1984) (emphasis in original; citation omitted). When a deposition does not include a reason for each change, explanations must be added. *Id.; Lugtig,* 89 F.R.D. at 641. Rule 30(e) also imposes a time constraint: a witness has 30 days to review and sign his deposition transcript from the time the deposition is submitted to him.

Basile failed to comply with Rule 30(e) in two respects. First, Basile did not provide reasons for all 41 changes he made to his deposition. Second, Basile did not sign the deposition until May 10, 1993. AT & T contends that Basile actually did include reasons for most of the changes, albeit on his draft rather than on the final change form. Defendant's Deposition Resp. at 2. Basile has now provided reasons for all his changes, and has provided them on the correct form. *Id.,* Exh. 1.

▆▆ Basile plainly did not comply with the requirements of Rule 30(e). However, the appropriate remedy for insufficient reasons for all Basile's changes and Basile's delay in signing the deposition is not to strike the changes. As in *Sanford* and *Lugtig,* the reasons should be (and now have been) provided. *Sanford,* 594 F.Supp. at 715; *Lugtig,* 89 F.R.D. at 641–42. Thus, the original answers remain and the changes and reasons have been added, and Hawthorne Partners is free to question Basile on the changes on cross-examination. *Lugtig,* 89 F.R.D. at 641–42. In addition, the deposition should not be reopened. A deposition should be reopened only if the changes make the deposition "incomplete or useless without further testimony." *Lugtig,* 89 F.R.D. at 642. Forty-one changes are not an inordinate number given the fact that Basile's deposition transcript is almost 500 pages long. The reasons have now been provided, and the deposition is neither incomplete nor useless. Hawthorne Partners' motion to exclude

Basile's changes or to reopen his deposition is denied.

### CONCLUSION

Defendants' joint motions *in limine* to (1) exclude expert opinions of Neil D. Williams on the reasonableness of the remedial work and the expected costs of designing and implementing soil and groundwater remediation efforts; (2) exclude evidence of the negotiations over and the terms of the effort to refinance the shopping center through Mutual of New York; (3) exclude evidence of the negotiations over and the terms of the failed sale of the shopping center to the State Teachers Retirement System of Ohio; (4) exclude testimony as to any responsibility of AT & T or ENSR for remediation of building interiors; and (5) exclude evidence regarding agency relating to the conspiracy claim and for judgment as a matter of law on the conspiracy claim are denied. Defendant AT & T's motion *in limine* to exclude evidence of purported pre-contract and post-contract representations and any specific reliance thereon in support of detrimental reliance claim or, in the alternative, for judgment as a matter of law on the detrimental reliance claim is denied. Hawthorne Partners' motion to exclude changes to the deposition of Angelo Basile or, in the alternative, for leave to reopen the deposition is denied.