BRYANT H. PRENTICE III *et al.*, Plaintiffs-Appellants, v. UDC ADVISORY SERVICES, INC., *et al.*, Defendants-Appellees.

First District (5th Division) Nos. 1—93—1987, 1—93—2211 cons.

Opinion filed February 17, 1995.

Michael B. Brohman and Michael P. Greenwald, both of Kamensky & Rubinstein, of Lincolnwood, for appellants.

Richard A. Devine and Allan T. Slagel, both of Pope, Cahill & Devine, Ltd., William H. Gifford, Jr., of Shefsky & Froelich, Ltd., and Sheldon I. Saitlin, of Saitlin, Patzik & Frank, all of Chicago, for appellees.

JUSTICE T. O'BRIEN delivered the opinion of the court:

Plaintiffs appeal from separate orders of the circuit court dismissing with prejudice their claims for promissory estoppel. The trial court held that plaintiffs could not invoke promissory estoppel while simultaneously seeking relief for breach of express contract. Under the facts and circumstances of this case, we affirm.

Because the trial court dismissed each of the counts in question pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), the factual allegations in the complaint are taken as true.

Plaintiffs are limited partners in defendant Sunbelt Properties, Ltd. (Sunbelt Properties), an Illinois partnership established in 1981 for the purpose of purchasing and developing real estate. Defendant UDC Advisory Services, Inc. (UDC Advisory), serves as the general partner of Sunbelt Properties and is a wholly owned subsidiary of defendant UDC-Universal Development L.P. (UDC). Defendant UDC is itself a limited partnership engaged primarily in the development of land and the construction of housing projects in connection with planned communities.

Beginning in or before 1981, UDC Advisory solicited plaintiffs to become investors in, and limited partners of, a venture known as Sunbelt Properties. The solicitation consisted of oral representations as well as written documents referred to collectively as the offering materials. The two most relevant documents were the "Confidential Memoranda" dated July 2, 1981, and the "Progress Report and Supplement to Confidential Memorandum" dated October 9, 1981.

As stated in the offering materials, the purpose of Sunbelt Properties was to acquire large tracts of undeveloped, multizoned real estate with capital contributed by the limited partners. The partnership would then retain UDC to develop the real estate into residential or commercial projects for the benefit of the partnership. In turn, the partnership would provide UDC with the option of purchasing certain real property owned or acquired by the partnership at a price to be determined by a formula set forth in the offering materials. The offering materials further contemplated that the formula price could result in a sale below the fair market value of the property.

Specifically, the confidential memorandum provided in pertinent part:

> "*Sales of Real Estate; Rights of UDC.* UDC will have the right to acquire from the Venture any and all of the properties acquired by the Venture which in the judgment of UDC are suitable for residential development, at a price equal to the sum of (i) the indebtedness to which such designated property is subject, plus (ii) all of the cash invested by the Venture to carry such designated

property, plus (iii) 10% per annum times the cash invested by the Venture in such designated property (measured from the date of such investment). UDC's right to acquire the designated property for the specified price may result in acquisitions by UDC below the fair market value of such property at the times of such acquisitions.

\* \* \*

The foregoing rights of UDC with respect to property which it deems suitable for residential development will not extend to property acquired by the Venture suitable for other development, such as properties suitable for commercial development, or income-producing properties held by the Venture."

The progress report and supplement to confidential memorandum subsequently modified the formula for calculating the purchase price as well as the class of property to which it applied. The progress report stated in relevant part:

"*Acquisition Rights of UDC.* UDC may purchase property planned and to be used for residential development ('residential real estate') from the Venture pursuant to the rights described in 'Proposed Activities—Sales of Real Estate; Rights of UDC' in the Memorandum. Such rights, which may be exercised in part and from time to time prior to expiration, shall have the following terms:

\* \* \*

*Formula Price.* The formula price at which UDC may acquire any residential real estate from the Venture shall be equal to the sum of (i) the indebtedness to which such residential real estate is subject, plus (ii) all of the net cash expended or invested by the Venture to acquire and carry such residential real estate being acquired by UDC, plus (iii) 10% per annum times the cash expended or invested to acquire or carry such residential real estate (measured from the date of expense or investment).

\* \* \*

*Residential Zoning:* UDC shall have the right to acquire from the Venture at the formula price only real estate that has been zoned for residential uses prior to any such acquisition by UDC."

Thus, in accordance with the confidential memorandum as amended, UDC was given the option of purchasing from the partnership at the formula price only real estate that had been zoned for residential uses. As to property zoned for other uses, UDC Advisory had to hold such real estate as a partnership investment or sell it to a third party at the prevailing market price.

To induce plaintiffs to invest in Sunbelt Properties, UDC Advisory and UDC orally represented that any residential property

subject to the option price would have "unlimited upside potential" and would generate a 10% cash return on investment. In addition, plaintiffs were told that if UDC exercised its option to purchase residential property from the partnership, then UDC would reimburse certain costs incurred by the partnership in acquiring the property, including attorney and accountants' fees as well as interest paid on loans.

Prior to being accepted as limited partners, UDC Advisory required plaintiffs to complete a "Subscription Agreement." Pursuant to this agreement, each subscriber acknowledged that he or she was applying for the purchase of "units of limited partnership interest" in Sunbelt Properties as described in the confidential memorandum and the progress report and supplement. Each subscriber also warranted that he or she had received and read the offering materials.

Plaintiffs and UDC Advisory thereafter executed articles of limited partnership and formed Sunbelt Properties. Although the articles set forth the respective rights and obligations of each of the parties, they remained silent as to the rights of UDC in purchasing real estate from the partnership. The articles did, however, expressly incorporate the subscription agreement which, as noted above, referenced the confidential memorandum and the progress report and supplement to confidential memorandum.

In October 1981, the partnership acquired approximately 1,300 acres of land (a/k/a the Aberdeen) in Palm Beach County, Florida. Plaintiffs allege that prior to the acquisition, "Aberdeen consisted of certain real estate zoned for residential use, as well as certain open or recreational space which included an 18 hole golf course and clubhouse (the 'Aberdeen Golf Course')." Exhibits attached to the complaint indicate, however, that UDC actually constructed the golf course after the acquisition.

In any event, Palm Beach County's Board of County Commissioners and Site Plan Review Committee had approved the Aberdeen property for a planned unit development. Pursuant to the Aberdeen PUD, the parcel of property encompassing the golf course was designated for recreational and not residential use.

Five years after the partnership's acquisition of Aberdeen, UDC Advisory sent a letter to UDC on behalf of Sunbelt Properties. This letter, dated July 12, 1985, confirmed that the partnership granted UDC the option of purchasing certain residential property acquired by the partnership. The letter further indicated that the terms of the option were set forth "in that portion of Sunbelt Properties, Ltd.'s July 2, 1981 Confidential Memorandum entitled 'Sales of Real Estate;

Rights of UDC' ... and that portion of Sunbelt Properties, Ltd.'s October 9, 1981 Progress Report and Supplement to Confidential Memorandum entitled 'Residential Real Estate.' "

On September 16, 1988, UDC exercised its option to purchase the Aberdeen property from the partnership at the formula price. Through its option, UDC purchased not only the parcels zoned for residential use, but also the parcel zoned for recreational use, *i.e.*, the Aberdeen Golf Course.

Plaintiffs, as limited partners, individually and on behalf of the partnership, filed a four-count complaint for declaratory judgment and other relief against UDC Advisory, UDC and, in its nominal capacity, Sunbelt Properties. In their complaint, plaintiffs challenged both the inclusion of the golf course as part of the residential real estate (the golf course issue) as well as the calculation of the purchase price with respect to the remainder of the property (the accounting issue). As to this latter issue, plaintiffs claimed that UDC Advisory and UDC improperly deducted nonresidential obligations when calculating the purchase price and otherwise failed to include required reimbursements, presumably attorney and accountants' fees and interest paid on loans.

Plaintiffs subsequently amended their complaint (entitled "first amended complaint") by adding five counts relating exclusively to the inclusion of the golf course as residential property. Counts V and VI alleged a breach of contract against UDC Advisory and UDC, respectively, for failing to abide by the terms of the written offering materials, subscription agreement, articles of limited partnership and oral representations. Counts VII and VIII repeated the operative allegations of the two prior counts under the theory of promissory estoppel. Finally, count IX asserted a combined claim for unjust enrichment against both defendants.

After the trial court granted in part a motion to dismiss certain allegations of the first amended complaint, plaintiffs filed an "amendment to first amended complaint." In the amendment, plaintiffs converted count IX into a breach of contract against UDC Advisory. In addition, plaintiffs added claims for promissory estoppel in counts X and XI against UDC Advisory and UDC, respectively. Each of these counts was based upon the incorrect method of calculating the option price.

Defendants thereafter filed a motion to dismiss the claims for promissory estoppel in counts X and XI pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Relying on *Wagner Excello Foods, Inc. v. Fearn International, Inc.* (1992), 235 Ill. App. 3d 224, 601 N.E.2d 956, defendants argued that plaintiffs

could not maintain any actions for promissory estoppel on the accounting issue while simultaneously pursuing claims for breach of contract. The trial court agreed and granted defendants' motion to dismiss with prejudice. Plaintiffs then filed an appeal in No. 1—93—1987.

Meanwhile, plaintiffs were granted leave by the trial court to file a "second amendment to first amended complaint." In this second amendment, plaintiffs converted count II (originally declaratory judgment and then unjust enrichment) to a breach of contract against UDC arising out of UDC's failure to pay the correct amount due under the option price.

Defendants subsequently moved for judgment on the pleadings on the remaining promissory estoppel counts relating to the golf course issue. They argued that counts VII and VIII should likewise be dismissed with prejudice in light of the trial court's previous dismissal of counts X and XI. The trial court agreed and granted the motion. Plaintiffs then filed their second appeal in No. 1—93—2211. We ordered the appeals consolidated prior to our review.

On appeal, plaintiffs contend that the trial court misapplied *Wagner* in denying them the right to plead alternative causes of action. Plaintiffs submit that the "trial court effectively ruled that no plaintiff in the State of Illinois can simultaneously plead and pursue alternative claims based on theories of breach of contract and promissory estoppel, notwithstanding a defendant's expressed denial of the existence of the contract giving rise to the plaintiff's breach of contract claim." We disagree.

In *Wagner*, the manufacturer of fruit drink concentrates filed a complaint against the purchaser of the manufactured goods. Plaintiff's complaint was based upon the defendant's failure to meet the minimum purchase requirements set forth in the parties' five-year contract. Plaintiff sought lost profits pursuant to an alleged breach of the contract and start up costs under the theory of promissory estoppel. The trial court dismissed the claim for promissory estoppel, holding that there could be no reasonable reliance by plaintiff under the facts alleged in the complaint. We affirmed on other grounds.

In affirming the trial court, we held that if a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the doctrine of promissory estoppel. (*Wagner*, 235 Ill. App. 3d at 235-37.) In other words, where the promisee is obligated to perform under a written contract, and therefore consideration exists, then it is unnecessary to resort to a doctrine which is intended to permit recovery for promises which lack consideration.

Nevertheless, we recognized in *Wagner* that a party may plead claims for breach of contract and promissory estoppel in the alternative. (*Wagner*, 235 Ill. App. 3d at 235, citing *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) In fact, several recent cases have held that *Wagner* does not necessarily preclude the alternative pleading of these claims. For example, in *Jackson National Life Insurance Co. v. Gofen & Glossberg, Inc.* (N.D. Ill. July 15, 1993), No. 93—C—1539, the court rejected defendant's attempt to dismiss a claim for promissory estoppel as an alternative to a breach of contract pursuant to *Wagner*. Instead, the court allowed the pleading in accordance with *Quake Construction*, recognizing that "(t)o the extent that (plaintiff) ultimately will not be able to prevail under both theories of recovery, it need not embrace one over the other at this earlier stage of the pleadings." *Jackson National Life Insurance Co.*, slip op. at ____. See also *Hawthorne Partners v. AT&T Technologies, Inc.* (N.D. Ill. 1993), 831 F. Supp. 1398, 1406.

■ These cases, to be sure, are entirely consistent with the position of this court in *Wagner* in allowing the assertion of alternative claims for breach of contract and promissory estoppel. However, once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel. As noted above, promissory estoppel is a method to enforce promises that do not meet the requirements of consideration. It is not intended " 'to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.' " (*Wagner*, 235 Ill. App. 3d at 237, quoting *General Aviation, Inc. v. Cessna Aircraft Co.* (6th Cir. 1990), 915 F.2d 1038, 1042, quoting *Walker v. KFC Corp.* (9th Cir. 1984), 728 F.2d 1215, 1220.) Thus, once consideration is found to exist, a party to the contract can no longer maintain an action for promissory estoppel where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for the contract. Such was the case in *Wagner*.[1]

■ In the instant case, plaintiffs attempt to circumvent the holding of *Wagner* by claiming that defendants have expressly denied the "existence of the contract giving rise to the plaintiffs' breach of contract claim." We find this contention unsupported by the record.

---

[1]In *Wagner*, we accepted and found at the plaintiff's urging that there was in fact an enforceable contract between the parties. That being so, we then held that the plaintiff could not seek redress under the theory of promissory estoppel.

It is true that, in both the original answer and subsequent amended answers, defendants denied that the terms and conditions of the contract were set forth completely and accurately, and further denied any breach of the contract or resulting damage. We initially note that there is a difference between denying a breach of a contract and denying its existence.[2] Even so, defendants have admitted both in the trial court and on appellate review that there was a contract between the parties. In their "Motion to Dismiss Certain Allegations of the First Amended Complaint," defendants unequivocally assert: "[T]here is no dispute that UDC Advisory did enter into an express, written agreement with Sunbelt's limited partners, namely the Articles of Limited Partnership of Sunbelt Properties, Ltd." Defendants repeated this assertion in their reply memorandum in support of their motion to dismiss certain allegations of the amended complaint and in their brief submitted to this court. We find these judicial admissions binding and incontrovertible.

Pursuant to *Wagner*, the remedy of promissory estoppel is no longer available to plaintiffs in light of defendants' judicial admission that there is a contract between the parties. In contrast to the legal remedies which arise from a breach of contract, promissory estoppel is an equitable theory of recovery which permits the enforcement of promises that are unsupported by consideration. Where proof of a contract fails, and where refusal to enforce a party's promise would be unjust in light of the promisee's detrimental reliance, promissory estoppel becomes the appropriate form of redress.[3] It is not available, however, where there is in fact a contract between the parties. In such a situation, promissory estoppel becomes superfluous. It is superfluous here.

---

[2]It is, of course, irrelevant whether plaintiffs will ultimately prove a breach of the contract since it is the existence of consideration and not the existence of a breach which precludes reliance on the theory of promissory estoppel.

[3]We submit that promissory estoppel may not lie even in the absence of a contract where the promisee's reliance results in a benefit flowing only to the promisor rather than to a third party, and the promisee does not otherwise forbear. In such a case, the remedy of unjust enrichment would be proper and would therefore negate the possibility of promissory estoppel which, being equitable in nature, is generally not available if another remedy exists. Here, plaintiffs' investment of capital appears to have resulted in a benefit flowing only to defendants. Thus, unjust enrichment would seem to apply, rendering suspect at best any of plaintiffs' claims for promissory estoppel. However, in light of our disposition of this case on other grounds, we need not rely on this basis to support the trial court's dismissal.

There is yet an even more compelling reason why dismissal of plaintiffs' claims for promissory estoppel was warranted in this case. Plaintiffs allege that they detrimentally relied on certain promises of UDC Advisory and UDC by completing the subscription agreements and investing in Sunbelt Properties. However, plaintiffs' execution of the subscription agreements and the tendering of capital could never be deemed "detrimental reliance" because plaintiffs were already obligated to provide that same performance under the contract. Promissory estoppel cannot be based upon a promise which only induces plaintiffs to do that which they were already legally bound to do.

In reaching this decision, we are not unmindful of the fact the parties vigorously dispute the terms of the contract in this case. Defendants maintain that the contract between the parties is confined to the articles of limited partnership. Plaintiffs, on the other hand, assert that the contract also includes the prior confidential memorandum, progress report and supplement to confidential memorandum, oral representations and subscription agreement.

■ Nevertheless, a dispute as to the terms of a contract rather than its existence cannot be grounds for invoking the doctrine of promissory estoppel where to do so would violate the parol evidence rule. In Illinois, a written contract is presumed to include all material terms agreed upon by the parties, and any prior negotiations or representations are merged into that agreement. Indeed, where two parties have executed a written contract to which they have assented as the complete integration of their agreement, extrinsic evidence, parol or otherwise, of antecedent understandings and negotiations is generally inadmissible to alter, vary or contradict the written instrument. See generally *J&B Steel Contractors, Inc. v. Iber & Sons, Inc.* (1993), 246 Ill. App. 3d 523, 527, 617 N.E.2d 405, *aff'd* (1994), 162 Ill. 2d 265; *A.W. Wendell & Sons, Inc. v. Qazi* (1993), 254 Ill. App. 3d 97, 105, 626 N.E.2d 280, *appeal denied* (1994), 156 Ill. 2d 555.

Although the relationship between the doctrine of promissory estoppel and the parol evidence rule has yet to be fully examined in this State, other jurisdictions which have considered the issue have uniformly held that, under circumstances analogous to the instant case, the parol evidence rule precludes any claims of promissory estoppel.

In *International Business Machines, Corp. v. Medlantic Healthcare Group* (D.C. Dist. 1989), 708 F. Supp. 417, a purchaser claimed that it was entitled to a discount of 25% off the list price of certain computer equipment pursuant to the parties' written agreement. The seller claimed that the contract was subsequently modified and that under the final agreement the purchaser was entitled to only a 15%

discount. When the purchaser paid an amount reflecting the larger discount, the seller sued.

The parties thereafter undertook discovery and eventually filed cross-motions for summary judgment. The purchaser argued that, even if the original agreement did not constitute a fully enforceable contract and was subsequently modified, the seller was still barred under the doctrine of promissory estoppel from charging the higher amount because the seller's representatives assured purchaser of the 25% discount. The court disagreed.

In rejecting the purchaser's claim of promissory estoppel, the court initially observed that other courts have held that an integrated written contract controls as against any prior inconsistent promises and nullifies the effect that promissory estoppel might otherwise have. (*IBM*, 708 F. Supp. at 424, citing *Durkee v. Goodyear Tire & Rubber Co.* (W.D. Wis. 1987), 676 F. Supp. 189, 192 ("To entertain a theory of recovery that makes a prior, inconsistent promise enforceable is to write the [parol evidence] rule out of existence"); *Kinn v. Coast Catamaran Corp.* (E.D. Wis. 1984), 582 F. Supp. 682, 687 ("In the circumstances of this case *** the parol evidence rule does not permit [plaintiff] to make use of *** prior oral representations, and prevents him from raising a viable promissory estoppel argument"); *Wojciechowski v. Amoco Oil Co.* (E.D. Wis. 1980), 483 F. Supp. 109, 115 ("[T]he parol evidence rule nullifies the salutory effects of the doctrine of promissory estoppel").) The *IBM* court then concluded that "[i]f prior oral representations, even those reasonably relied upon to the promisee's detriment, could be used to defeat the express terms of a subsequent written agreement, the parol evidence rule would be, as a practical matter, reduced to nothing." *IBM*, 708 F. Supp. at 424.

■ Other courts which have considered the relationship between the parol evidence rule and the doctrine of promissory estoppel have likewise ruled that any promises and representations supporting a claim of promissory estoppel which are inconsistent with the terms of the subsequent integrated contract cannot be introduced into evidence in violation of the parol evidence rule.[4] (See, *e.g., Big G Corp. v. Henry* (1987), 148 Vt. 589, 536 A.2d 559; *Highway Equipment Co. v. Caterpillar, Inc.* (S.D. Ohio 1989), 707 F. Supp. 954, *aff'd* (6th Cir.

---

[4]The only case which arguably holds that promissory estoppel will lie even where the parol evidence rule would be violated is *Ehret Co. v. Eaton* (7th Cir. 1975), 523 F.2d 280. However, the Seventh Circuit Court of Appeals subsequently rejected the analysis of *Ehret* in *Sunstream Jet Express, Inc. v. International Air Service Co.* (7th Cir. 1984), 734 F.2d 1258.

1990), 908 F.2d 60; *Snellman v. A.B. Dick Co.* (N.D. Ill. March 20, 1987), No. 81 C 3048.) We, too, recognize the rights of a party to an integrated contract to enforce the contract as written. A party to a contract simply cannot ignore his or her obligations arising under the agreement by invoking the doctrine of promissory estoppel merely because in hindsight that party may have received greater benefits under some parol understanding or negotiation. The under-pinnings of this principle, *i.e.*, the sanctity of a promise, certainty in the marketplace and the expectations of parties, are cornerstones of contract law. Accordingly, we hold that under the facts and circumstances of this case, plaintiffs cannot base their claim for promissory estoppel upon prior written or oral understandings or negotiations which would violate the parol evidence rule.

It may be argued, of course, that parol evidence is admissible under certain circumstances, as in the case of an ambiguous or incomplete contract. However, where a court admits prior representations because of ambiguity or partial integration, such representations are either construed as part of the contract between the parties (where the contract is final but incomplete) or simply used as an aid in construction (where the contract is ambiguous). The purpose in considering the parol agreements stems not from their promissory obligation but upon the aid they afford the court in construing the contract.

Where the contract is either supplemented or interpreted *vis-a-vis* parol evidence, it is the law of contracts and not the doctrine of promissory estoppel which provides the remedy. Indeed, permitting a claim for promissory estoppel under these circumstances would be antagonistic to a court's finding of a contract and would undermine the rationale of *Wagner*.

For the foregoing reasons, we affirm the orders of the circuit court.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.